(158 App. Div. 687.)

### VAN DER BENT v. GILLING.

(Supreme Court, Appellate Division, Third Department. November 12, 1913.)

1. SPECIFIC PERFORMANCE (§ 29*)—CONTRACTS—DESCRIPTION—CERTAINTY.

Plaintiff owned three adjacent parcels of land, containing 70 acres, each of which was practically a parallelogram extending northwest and southeast; the easterly parcel being the longest and the northwest end of the land being wooded. Thereafter defendant entered into a contract to sell plaintiff 40 acres of her property, including the woods and pond on the northwest side, further to be described in proper form. *Held*, that the description in the contract was sufficient to warrant specific performance of the contract, as the wooded portion and that in which the pond lay might be severed from the remaining 30 acres by drawing a straight line across the land parallel to the southern boundary; that being the obvious intent of the parties.

[Ed. Note.—For other cases, see Specific Performance, Cent. Dig. §§ 69–82; Dec. Dig. § 29.*]

2. SPECIFIC PERFORMANCE (§ 13*)—CONSTRUCTION OF CONTRACT.

Where defendant could convey good title to the land, a contract of sale, which required a conveyance in case no difficulty arose to make the transfer impossible, may be specifically enforced, even though defendant's husband objected to the sale, and it was not for her interest.

[Ed. Note.—For other cases, see Specific Performance, Cent. Dig. §§ 30–32; Dec. Dig. § 13.*]

3. SPECIFIC PERFORMANCE (§ 127*)—DENIAL OF RELIEF—LIEN.

Where plaintiff, who sought specific performance of a contract to convey land, showed that he had paid the consideration therefor and had not received a conveyance, his complaint, although not showing him entitled to specific performance, should not be dismissed, but should be retained, and a lien impressed on the property.

[Ed. Note.—For other cases, see Specific Performance, Cent. Dig. §§ 406–411; Dec. Dig. § 127.*]

Appeal from Special Term, Ulster County.

Action by Teunis J. Van Der Bent against Emma W. Gilling. From a judgment for defendant, plaintiff appeals. Reversed and remanded.

Argued before SMITH, P. J., and KELLOGG, LYON, HOWARD, and WOODWARD, JJ.

Van Etten & Cook, of Kingston, for appellant.
Coulter, Bond & McKinney, of New York City, for respondent.

LYON, J. The complaint demanded the specific performance by defendant of the following agreement:

"Shokan, September 14, 1912.

"For the sum of twelve hundred dollars ($1,200) received, I, Emily Wilhemia Gilling, hereby sell to Teunis J. Van Der Bent 40 acres of my property,

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

including woods and pond on the northwest side of my property, further to be described in proper form, when of the sum received I have paid the mortgage and interest owing to Alvah Bogart and I legally can dispose of this property by sale. And until this transfer of property has been legally made, I undersign this document as proof of having received the full sum of twelve hundred dollars ($1,200). In case any difficulty in title or otherwise may arise which would make this transfer of property impossible, I agree to return and pay back this amount on September 14, 1913, with interest at 6 per cent. per annum.                                                    Emily W. Gilling.

"In presence of A. Van Der Hook."

The respondent's property referred to in this agreement consisted of 70 acres of land, situated in the town of Olive, Ulster county, N. Y. The conveyance thereof to respondent, in 1901, described it in three parcels, lying side by side, extending northwest and southeast, each of which was practically a parallelogram, having the northerly and southerly lines parallel, and the easterly and westerly lines nearly so. The southern boundaries of the three parcels formed a straight line about 20 chains long. The easterly parcel was about 44 chains in length. The two westerly parcels were about 29 chains long, with their northern boundaries in the same straight line, excepting that there had been sold to one Coons in 1853, out of the northwest corner of the westerly parcel, a triangular piece containing about 1½ acres.

The survey which the appellant and respondent had agreed to have made in order to definitely locate the 40 acres called for by the agreement was established by a surveyor in October by running a dividing line northeasterly and southwesterly across the farm, parallel to the northerly and southerly boundary lines, save as to the small triangular piece. This dividing line, therefore, created two parcels, one of 40 acres, which was to be conveyed to the appellant, and one of 30 acres, which was to be retained by the respondent. Both were compact, well-proportioned parcels, with the public highway running in a generally northwesterly direction through each.

The 30-acre parcel was practically a parallelogram, the northerly and southerly lines being parallel and each about 15 chains in length, and the easterly and westerly lines nearly parallel and each about 19 chains in length. The house was situated upon this 30-acre piece, easterly and not far from the center of the parcel. The 40-acre parcel as thus laid out included the pond and big woods, and in fact all the woods, except an irregular area of about 1½ acres referred to in the testimony as light woods, which extended south of the dividing line and in places into the northwest corner of the 30-acre parcel about 200 feet.

[1] The defense mainly relied upon, at the trial and on this appeal, was that the agreement of September 14th did not constitute a contract which was subject to specific performance, in that the property was so indefinitely and insufficiently described as not to warrant a court of equity in granting specific performance. The quantity of land to be taken out of the 70 acres was definitely stated, and the single question is whether the agreement specified the location of the 40 acres with sufficient definiteness to permit it to be located with at

least reasonable certainty. It would seem that it did. People ex rel. Myers v. Storm, 97 N. Y. 364.

Had the agreement provided for conveying 40 acres to be taken off the east or south side of the 70-acre farm, extending due north and south and forming a parallelogram, there would be no hesitancy in holding that the division must be made by running a line parallel to the side or end lines of the lot and a sufficient distance therefrom to inclose 40 acres. Had the farm extended due northwest, and hence its northerly boundary line run due northeast and southwest, and the 40 acres was to be taken off the northwest side of the farm, the southerly line of the 40 acres must be beyond question run due northeast and southwest, or parallel to the northern boundary lines of the lot; otherwise, land would be included which was not in the northwest side and land excluded which was in the northwest side.

In the case at bar the 70 acres extended not quite due northwest, but northwesterly, all the northerly boundary lines, except as to the small triangular piece, running north 47 degrees east. It may fairly be assumed that the intention of the parties, in providing in the contract that the 40 acres should be taken off the northwest side of the 70 acres, was that the southerly line of the 40 acres should run the same course as the northerly boundary lines of the 70 acres, and sufficiently far therefrom to inclose 40 acres, and that the line should be a straight line, disregarding the irregularities, and run in the same northeasterly and southwesterly direction.

While the northerly line of the 70 acres was irregular, by reason of the long rectangular extension of the easterly parcel, and by the conveyance of the Coons piece, yet it is not reasonably to be inferred that it was the intention of the parties to follow the contour of the northwesterly boundary of the tract in creating a dividing line between the 40-acre and the 30-acre parcels. Such a line would not only have been very long and irregular, having four courses, but would have excluded a portion of the pond from the 40-acre parcel, and thus have been contrary to the agreement, which provided that the woods and pond should be included in the parcel. But, if a deflection of the dividing line to the south should have been made at the westerly end by reason of the sale of the Coons piece, as seems to be suggested by respondent in his brief, then the dividing line near the easterly end should have been run northwesterly and then northeasterly to correspond with the rectangular extension of the easterly parcel. Not only was the straight dividing line shorter than any other, but it was the only line which could be located between the two properties to the advantage of each. At the time the agreement was executed, neither party knew just where the dividing line would come; hence the words were inserted in the agreement, "further to be described in proper form," and it was practically agreed that the surveyor should run out the 40 acres and locate the dividing line.

[2] Respondent's son assisted in making the survey, and when the proposed deed was read to the defendant about November 27th, and she was requested to sign it, she made no objection to doing so, based upon an improper division of the property, but refused to execute

the deed solely upon the ground that her husband thought she had better not sell it. It also appears that subsequent to the execution of the agreement she had been offered a better price for the property. The fact of the extension of the acre and a half of light woods south of the dividing line does not materially affect the question of the location of such line. Irregularity of contour of forests is usual, and neither party intended that such irregular line should be followed as the dividing line between the properties. Plainly the woods referred to by the parties in making the agreement were the woods known as the "big woods."

Under the evidence, we think the description contained in the writing of September 14th was sufficiently definite to warrant a decree for specific performance. A contract being a much less formal document than a deed, the same particularity of description was not required in the agreement, although doubtless the description must be sufficiently definite to permit of the property being located with reasonable certainty. We think that the dividing line established by the surveyor and agreed upon by the parties accorded with the intention of the parties at the time the agreement was executed. It was conceded by the answer that the respondent could convey a legal title to the 40 acres; hence making a transfer thereof had not become impossible within the meaning of that term used in the agreement.

[3] But, even under the holdings of the learned trial court as to the insufficiency of the contract, we think the complaint should not have been dismissed, but that a lien should have been impressed upon the property to secure the repayment to the appellant of the moneys so paid by him to respondent, which apparently were used by respondent in removing the mortgage lien upon the 70 acres, and which, so far as the record discloses, the respondent has never offered to repay. Respondent's attorney stated upon the argument that the appellant had in good faith and in reliance upon the agreement of September 14th expended several hundred dollars in improvements upon the 40-acre parcel, but the present record contains no evidence upon that subject.

We think that the judgment should be reversed, and a new trial granted. The findings of fact disapproved of are the fifth, sixth, seventh, eighth, and ninth. Judgment reversed, and new trial granted, with costs to appellant to abide the event.

Judgment reversed on law and facts, and new trial granted, with costs to appellant to abide event. The findings of fact disapproved of are the fifth, sixth, seventh, eighth, and ninth. All concur, except KELLOGG, J., who concurs in reversal on the ground that a lien should be impressed upon the entire property for the amount paid, with interest.